**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

SANDY MAURO,

        **Plaintiff,**

v.                                    **Civ. Action No. 1:19-CV-6**

INFOCISION, INC.,

        **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT INFOCISION,
INC.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 27]**

    Pending before the Court is Defendant Infocision, Inc.'s Motion for Summary Judgment (ECF No. 27). For the reasons discussed herein, the Court grants the motion.

### I.    INTRODUCTION AND PROCEDURAL HISTORY

    Plaintiff, Sandy Mauro ("Plaintiff"), filed suit against Defendant, Infocision, Inc. ("Defendant"), in the Circuit Court of Harrison County, West Virginia, alleging the following causes of action: Age Discrimination in Violation of the West Virginia Human Rights Act (Count One) and Tort of Outrage (Count Two). ECF No. 1-2. On January 10, 2019, Defendant filed a Notice of Removal to this Court. ECF No. 1. On January 17, 2019, Defendant filed a Motion to Dismiss Count II of the Complaint. ECF No. 3. That motion was granted. ECF No. 22. Thereafter, on October 21, 2019, Defendant timely filed its Motion for Summary Judgment. ECF No. 27. Plaintiff filed her response in opposition on November 11,

2019, ECF No. 29, while Defendant submitted its reply on November 25, 2019.  ECF No. 31.  The Court entertained oral argument on the pending motion on January 24, 2020.  The matter is now ripe for decision.

## II.  <u>FACTUAL BACKGROUND</u>

Plaintiff commenced employment with Defendant on November 21, 2005 as a Communicator.  (Pl. Dep. Tr., ECF No. 28-3, at 15-16). That position is best described as an entry-level position within Defendant's call centers where Communicators make and receive telephone calls on behalf of Defendant's clients.  (<u>Id</u>. at 28-29, 35-37).  At the time of her hire, Plaintiff was 48 years of age. (<u>Id</u>. at 10, 29).

Shortly after hire, Plaintiff was promoted to a salaried, non-exempt Call Center Trainer position.  (<u>Id</u>. at 16-17).  She worked in that position until her termination on August 15, 2018. (<u>Id</u>. at 18-21, 23-24).  In that training role, Plaintiff was charged with training new Communicator hires, monitoring their calls, coaching and otherwise providing feedback.  (<u>Id</u>. at 17, 23; Adamescu Dep. Tr., ECF No. 28-4, at 57-71).  She was also required to make or receive calls as a Communicator if demand required. (Pl. Dep. Tr. at 36-37).

In late 2017, Defendant undertook a corporate-wide restructuring of all call center operations to address low

retention rates.[1]  (Adamescu Dep. Tr. at 73-76).  Prior to the restructuring, Plaintiff's work location – Clarksburg, West Virginia – had two Call Center trainers:  Plaintiff, age 60, and Margie Fultineer, age 40.  (Adamescu Dep. Tr. at 81-82; Pl. Dep. Tr. at 65-66, 10, 100-101; Adamescu Decl., ECF No. 28-2, at ¶10). Call centers were given the option of adding a new role, Learning and Engagement Supervisor ("LES"), which was designed to review the new hire onboarding process to improve employee retention rates.  (Adamescu Dep. Tr. at 78-80, 89-91).

Plaintiff sought the Clarksburg LES position but was not selected.  (Id. at 88).  Carrie Noll, age 41, was promoted to the Clarksburg LES position.  (Id. at 88; Adamescu Decl. at ¶8).  Noll had worked in Human Resources.  Plaintiff retained her same position with the same pay and benefits.[2]  (Pl. Dep. Tr. at 66-67).  Plaintiff did have reduced responsibilities for in-class training yet, again, retained the same rate of pay.  Ms. Fultineer, Plaintiff's peer as a Call Center Trainer, was demoted from Call

---

[1] Plaintiff does not assail the corporate-wide restructuring with allegations of age discrimination.

[2] Despite being advised via a January 12, 2018 memorandum that she was not being demoted, Plaintiff posted the following on her personal Facebook page:  "Domoted [sic]??? LOL Retirement looking better and better everyday going to spend more time doing MARY KAY."  (Pl. Dep. Tr. at 63-73 and Ex. G thereto; Adamsecu Dep. Tr. at 55 and Ex. 3 thereto).  Call Center Manager Pam Alastanos thereafter met with Plaintiff to again advise she was not being demoted as part of the restructuring.  (Pl. Dep. Tr. at 36, 53-55).

Center Trainer to Communicator. (Id.). Fultineer is younger than Noll.

Around July 2018, following Noll's selection for the LES position, Defendant asked Plaintiff to assist with its Secret Shopper program. (Id. at 26, 90). This program involved an employee of Defendant calling Communicators posing as an outside caller to assess the Communicator's performance. (Id. at 84-85; Adamescu Dep. Tr. at 101-104). Secret Shopper calls are made elsewhere than the call center space used by Communicators. (Pl. Dep. Tr. at 92-93; Adamescu Dep. Tr. at 137-138). At the conclusion of the call, the Secret Shopper reveals the "ruse" and offers a critique of the Communicator's performance. (Pl. Dep. Tr. at 84-85; Adamescu Dep. Tr. at 101-104). A written evaluation is also completed. (Id.). This program is a specialized and unique one Defendant offers its clients to improve quality including results being reported to clients. (Adamescu Dep. Tr. at 116-122). Because of this, Secret Shopper employees are required to account for their time spent in a Secret Shopper role separately from other work. (Id.). The Secret Shopper work time is coded differently in Defendant's computer system. (Id. at 93).

On August 8, 2018, Plaintiff advised her manager Ms. Alastanos she needed to use five (5) hours of vacation to attend an appointment but she would work three (3) hours that day to round out her work day. (Pl. Dep. Tr. at 80-84; Adamescu Dep. Tr. at

4

108-110).   Time cards were due that same day so Ms. Alastanos recorded the time as requested by Plaintiff.  (Adamescu Dep. Tr. at 108-110).   Plaintiff emailed Ms. Alastanos that she would be making Secret Shopper calls from home.  (Pl. Dep. Tr. at 81-84 and Ex. J thereto).

Ms. Alastanos was confused as to whether Plaintiff actually worked on August 8, 2018 so the following day she exchanged emails with Plaintiff to ascertain whether she worked from home the evening in question.  (Pl. Dep. Tr. at 81-84 and Ex. J thereto; Adamescu Dep. Tr. at 108-110, 112-113, 129-130).  Plaintiff stated she did in fact work from home that evening but told Ms. Alastanos to "just put in [sic] down as vacation time that will be fine." (Pl. Dep. Tr. at 81-84 and Ex. J thereto).   Prompted by her confusion, Ms. Alastanos contacted Presentation Skills Trainer Training Coordinator Michelle Baum who oversaw Defendant's Secret Shopper program.  (Adamescu Dec. ¶3; Adamescu Dep. Tr. at 107, 109-110, 113-114, 129-131 and Ex. 2 thereto).   Ms. Baum has the ability to research Defendant's databases tracking Secret Shopper work including the number of calls an employee makes, the length of those calls and the records related to those calls.  (Adamescu Dep. Tr. at 109-112, 131-132).   Ms. Baum reviewed Defendant's Secret Shopper records for August 8, 2018 and found Plaintiff had made only one call lasting 15 minutes.  (Id.). Considering that and Plaintiff's claim she had worked three hours, Ms. Alastanos

contacted Jill Adamescu, Defendant's Corporate Human Resources Manager, to raise concerns about Plaintiff "stealing company time." (Id. at 112-113 and Ex. 6 thereto).

Ms. Adamescu, consistent with her job responsibilities, commenced an investigation of Plaintiff's time worked and call records from July 24, 2018 through August 10, 2018. (Adamescu Dec. ¶¶3-6 and Exs. P, Q and R thereto; Adamescu Dep. Tr. at 104, 111-115, 129-176 and Exs. 4, 5, 6, 7 and 8 thereto). This investigation involved communicating with Ms. Alastanos, Ms. Baum and Deloris DeHart, Defendant's Director of New Employee Training, as well as a review of company database records to ascertain the time Plaintiff spent working. (Adamescu Dec. ¶¶ 3-6 and Exs. P, Q and R thereto; Adamescu Dep. Tr. at 112-115, 129-176 and Exs. 4, 5, 6 and 7 thereto). Ms. Adamescu used Defendant's records to compare the time Plaintiff had recorded as a Secret Shopper with the number of calls she made, the length of those calls and the documentation generated from those calls. (Id.).

The investigation revealed lengthy periods of time when no work was performed while Plaintiff logged time in Defendant's Secret Shopper program between July 24, 2018 and August 10, 2018. (Adamescu Dec. at ¶¶3-7 and Exs. P, Q and R thereto; Adamescu Dep. Tr. at 155-157 and Exs. 4, 5, 6 and 7 thereto). Ms. Adamescu discovered that, on each day her investigation covered, Plaintiff, while making some calls, recorded periods of time worked where she

did not perform Secret Shopper work.  (Adamescu Dec. at ¶¶3-7 and Exs. P, Q and R thereto; Adamescu Dep. Tr. at 129-176 and Exs. 4, 5, 6, 7 and 8 thereto).  Ms. Adamescu learned a "typical employee" should be able to "easily" make and complete ten (10) Secret Shopper calls per day including the required quality audit paperwork.  (Adamescu Dec. ¶¶3-7 and Ex. P thereto; Adamescu Dep. Tr. Ex. 4, 5, 6 and 7).  Plaintiff did not hit this mark once during the 13-day period being investigated.  (Id.)

On August 13, 2018, Ms. Adamescu and Ms. Alastanos spoke with Plaintiff by telephone.  (Pl. Dep. Tr. at 87-91, 94-97 and Ex. 6 thereto; Adamescu Dep. Tr. at 140-145, 159).  They discussed the current findings of the investigation and Ms. Adamescu raised concerns about Plaintiff's hours logged as a Secret Shopper. (Id.).  Plaintiff advised she was aware of how to properly code her time as a Secret Shopper but could not account for the discrepancy between her hours logged working as a Secret Shopper and the records of her call activity.  (Pl. Dep. Tr. at 87-91, 94-97, 107 and Ex. 6 thereto; Adamescu Dep. Tr. at 140-145, 159). She stated her recorded hours were accurate and offered no explanation as to her low productivity.  (Id.)

After this call, Ms. Adamescu continued her investigation in an effort to discern a legitimate reason for Plaintiff's poor productivity compared to hours recorded as worked.  (Adamescu Dep. Tr. at 160-163).  She also consulted with her supervisor, Ms.

Wilson, to explore any possible alternative reason for Plaintiff's lack of production. (Id. at 11, 157-158, 180-182). Finding none, Defendant decided to terminate Plaintiff's employment. (Pl. Dep. Tr. at 126-127 and Ex. O thereto at p. 33; Adamescu Dec. ¶¶1, 7; Adamescu Dep. Tr. at 177 and Ex. 2 thereto). Ms. Adamescu, age 55, and Ms. Wilson, age 43, made the adverse employment decision. (Adamescu Dec. ¶1, 7; Adamescu Dep. Tr. at 177). Ms. Adamescu communicated that decision to Plaintiff on August 15, 2018 via telephone. (Pl. Dep. Tr. at 99-100, 106, 126-127 and Exhibit O thereto at p. 33; Adamescu Dep. Tr. at 159, 180 and Ex. 8 thereto). The stated reason for the discharge was "stealing company time," gross misconduct and grounds for immediate termination under the terms of Defendant's employee handbook. (Pl. Dep Tr at 126-127 and Ex. O thereto at p.33; Adamescu Dec. ¶¶1, 7; Adamescu Dep. Tr. at 177 and Ex. 2 thereto). Ms. Adamescu afforded Plaintiff another opportunity to explain the discrepancy in her time records and work records. (Pl. Dep. Tr. at 99; Adamescu Dep. Tr. at 159). Plaintiff offered no explanation on this occasion either. (Id.). Nor did Plaintiff claim her discharge was motivated by her age. (Pl. Dep. Tr. at 94-99 and Ex. 6 thereto). Plaintiff's discharge was confirmed via letter dated August 20, 2018. (Adamescu Dep. 159, 176-177 and Ex. 8 thereto).

No "new" employee was hired to replace Plaintiff. (Adamsescu Dep. Tr. at 92-93). Instead, Plaintiff's job duties were assigned

to existing employees: Ms. Noll, again, age 41, and Frank Pennacchio, age 59. (Adamescu Dec. ¶8).

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof."  <u>Id</u>. at 317–18.  Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

### IV.  <u>ANALYSIS</u>

The remaining count in Plaintiff's complaint alleges unlawful age discrimination in violation of the West Virginia Human Rights Act, W. Va. Code §5-11-1 <u>et</u> <u>seq</u>.  Specifically, Plaintiff contends

her August 15, 2018 termination was unlawfully motivated by her age.

### A. Governing Framework

No direct evidence of discrimination, such as a statement attributed to a decision-maker, exists in the record before the Court.  Thus, the traditional burden-shifting framework applies to Plaintiff's claim under the Human Rights Act.  See Bartos v. PDC Energy, Inc., 275 F. Supp.3d 755, 760 (N.D.W. Va. 2017); see also Woods v. Jefferds Corp., 824 S.E.2d 539, 547 (W. Va. 2019) ("It is the rare case where there is evidence a defendant directly announces acting with a discriminatory intent. Most cases require the plaintiff to imply through circumstantial evidence that a defendant meant to improperly discriminate.").  Initially, Plaintiff must establish a prima facie case of discrimination that raises an inference of discrimination.  The burden of production then shifts to Defendant to put forth a legitimate, non-discriminatory reason for the adverse employment action.  Then, Plaintiff must offer sufficient evidence of pretext casting sufficient doubt on Defendant's stated reason requiring jury resolution of the disputed facts.

"In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 et seq. (1979), the plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected

10

class; (2) That the employer made an adverse decision concerning the plaintiff; [and] (3) But for the plaintiff's protected status, the adverse decision would not have been made." Syl. Pt. 1, Knotts v. Grafton City Hosp., 786 S.E.2d 188, 190 (W. Va. 2016) (citation omitted). "The 'but for' test of discriminatory motive in Conaway v. Eastern Associated Coal Corp., 358 S.E.2d 423 (W. Va. 1986), is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." Syl. Pt. 2, Id.

Once a plaintiff offers sufficient proof to establish a prima facia case, the burden of production (not proof) shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the adverse employment action, in this case, termination. See Bartos, 275 F. Supp.3d at 760. "The reason need not be a particularly good one. It need not be one which the judge or jury would have acted upon. The reason can be any other reason except that the plaintiff was a member of a protected class." Id. (quoting Conaway, 358 S.E.2d at 430).

If the defendant articulates such a reason, the burden returns to the plaintiff who then must demonstrate the defendant employer's stated reason is but a pretext for the discriminatory motive alleged. See id. "Pretext means an ostensible reason or motive assigned as a color or cover for the real reason or motive; false appearance; pretense. ... A proffered reason is a pretext if it was not the true reason for the decision [.] ... The third step of

11

the ... proof scheme, pretext, is a ... realization that some explanations are the product of hindsight rather than a true barometer of what occurred at the time of decision." Mayflower Vehicle Sys., Inc. v. Cheeks, 629 S.E.2d 762, 773 (W. Va. 2006) (internal quotations and citations omitted).

**B. Prima Facie Case**

The undisputed facts reveal Mauro was over 40 at the time of her termination and that she suffered an adverse employment action. Thus, she satisfies the first two elements of a prima facie age discrimination case. As is most often the case, the crux at this stage of the analysis rests with the third element – sufficient evidence linking the adverse employment decision with a plaintiff's protected class status to give rise to an inference that the decision was motivated by unlawful reasons. See Conaway, 358 S.E.2d at 429. That proof can come in a number of ways – disparate treatment of individuals outside the protected class, statistical evidence, eliminating the stated purported legitimate reasons for the adverse employment decision or showing a plaintiff was replaced by a substantially younger employee. See id.; Bartos, 275 F. Supp.3d at 760.

However, Plaintiff has failed to marshal sufficient evidence in any of these suggested categories or otherwise to lead this Court to conclude that the "but-for" question requires jury resolution. No evidence has been presented to the Court

demonstrating disparate treatment of a younger employee. Plaintiff likewise has not "eliminated" Defendant's legitimate, non-discriminatory reason for her discharge.  The Court addresses her pretext burden hereinafter; however, Plaintiff has failed to present any evidence calling into question the stated reason for the adverse employment action made subject of this litigation. Defendant has presented unrefuted evidence of a multi-person investigation which concluded Plaintiff committed gross misconduct and should be terminated.  Plaintiff does not argue Defendant erred in determining she failed to properly record her time.  Instead, as she testified in her deposition, Plaintiff concedes "she was human and could have made an error."  (Pl. Dep. Tr. at 91). Plaintiff did not dispute or endeavor to explain the timekeeping/productivity discrepancy during the internal investigation despite being afforded multiple opportunities to do so.  She fails to cast doubt upon that reason here either.

In her opposition brief, Plaintiff places great significance upon Ms. Noll's promotion to the LES position as evidence to support a prima facie case of age discrimination.  Further, at the January 24, 2020, oral argument, Plaintiff's counsel contended the alleged failure to promote with respect to the LES position was a separate adverse employment action for which Plaintiff sought damages.  However, no such claim is clearly pled in her Complaint. See Caudill v. CCBCC, Inc., 651 F. Supp.2d 499, 510 (S.D.W. Va.

13

2009) ("Indeed, a plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (internal quotations and citations omitted).   Giving Plaintiff and her counsel the benefit of the doubt here, the Court assesses this allegation as both a stand-alone discrimination claim for damages and as purported evidence of Plaintiff's discriminatory discharge cause of action.

Again, Plaintiff points to the decision to promote a different employee to the Learning and Engagement Supervisor (LES) position. ECF No. 29 at 11.  Specifically, Plaintiff contends the promotion of Ms. Noll to LES was further evidence Defendant's legitimate, non-discriminatory reason is "eliminated" noting the decision as a "prime example" of age-based disparate treatment.  Id.  However, Plaintiff does not expound on the point failing to demonstrate how such "evidence" is sufficient at summary judgment stage.  Her conclusory and sweeping characterization is insufficient under Rule 56 of the Federal Rules.  Plaintiff ignores the aspect of the restructuring where Ms. Noll was promoted while Ms. Fultineer was demoted.  Ms. Fultineer is the younger of the two – which cuts against Plaintiff's age bias claims.  Ms. Noll occupies the same protected class as Plaintiff.  Again, the decision-makers (Adamescu, age 55, and Wilson, age 43) are, like Plaintiff, within the Human Rights Act's protected class.

Defendant cited evidence in the record explaining its LES promotion decision specifically concerns about Plaintiff's "lack of professionalism." Defendant specifically points to an incident where Plaintiff made "racially inappropriate remarks" concerning stopping for gas in what Plaintiff perceived to be a problematic part of town and "those people" in that section of town. (Adamescu Dep. Tr. at 85-86). Ms. Adamescu testified she had concerns Plaintiff lacked a "filter" and had deficiencies in professionalism. (Id. at 86). Adamescu "had to coach her on some professional etiquette." (Id. at 85).

The LES position was supervisory. In addition, the anticipated function of that job – to orient new employees and work to improve employee retention rates – motivated the selection of Ms. Noll as opposed to the other applicants including Plaintiff. As Ms. Adamescu testified, Defendant "wanted that new employee experience to be better and more professional." (Id. at 90). Given the concerns about Plaintiff's professionalism or "filter" as well as Ms. Noll's qualifications[3], Ms. Noll was ultimately selected. Plaintiff did not believe Ms. Noll was qualified to

---

[3] Ms. Adamescu specifically mentioned Ms. Noll's educational background and described her as "very professional, very polished, very well-spoken, very intelligent." (Id. at 99). Ms. Noll majored in business with a focus on Human Resources. (Id. at 98-99). She also cited Ms. Noll's "conceptual thinking" skills. (Id.).

perform the in-class training aspect of the LES job. (Pl. Dep. Tr. at 62; ECF No. 29 at 4).

Plaintiff's argument this employment decision is either a stand-alone incident of age discrimination requiring jury resolution or evidence of age-based animus in the ultimate discharge decision lacks merit. Plaintiff points this Court to no evidence in the record age played any role in the LES promotion decision. Again, the record is devoid of any direct evidence of discriminatory animus such as decision-maker comments. Plaintiff offers no evidence linking the LES promotion decision to a prohibited factor such as age and certainly falls well short of a prima facie showing of age discrimination. Defendant offered legitimate, non-discriminatory reasons for its decision which Plaintiff fails to sufficiently assail with evidence of pretext. Again, the decision-makers are in the protected class made subject of this case as was the employee ultimately chosen. Plaintiff retained her same rate of pay despite her social media cry of demotion.[4] Instead, the youngest of the pool of employees seeking promotion was demoted. Defendant pointed to respective qualifications and concerns about Plaintiff's professionalism based on a prior incident as legitimate, non-discriminatory reasons for its decision. This Court is certainly mindful of the

---

[4] Again, Defendant followed up with Plaintiff to clarify she was not demoted.

standard applicable to the pending motion and the inferences to which Plaintiff may be entitled based on the record.  However, this Court is not required to strain logic beyond reason in assessing the merits of a summary judgment motion even on age discrimination actions.  The LES promotion decision cannot survive a summary judgment challenge as an independent claim under the Human Rights Act nor is it evidence of the presence of a forbidden factor in Plaintiff's termination.

Lastly, with respect to the Conway factors, Plaintiff did not offer any statistical evidence in support of her age discrimination claim either.  Defendant points to the ages of nearly all the salaried employees working at Infocision's Clarksburg location. Nine of eleven (9 out of 11) salaried employees other than Plaintiff were over the age of 40 at the time of her discharge. (Adamescu Decl. at ¶8 and Ex. 2 thereto).  Considering all of the suggested factors or examples a plaintiff could use to demonstrate a prima facie case of age discrimination and the events to which Plaintiff points to here, Plaintiff has not satisfied her burden at summary judgment stage.

Instead, Plaintiff focuses on her obvious belief and preference that a less severe form of progressive discipline should have been imposed.  Paraphrased, Plaintiff argues the decision to terminate her was, simply, not fair based on her tenure, "respect

among her employees" and prior positive performance reviews.[5]  ECF No. 29 at 10-11.  No Court sits in judgment of discretionary employment decisions outside the burden-shifting analysis required to ferret out potential discriminatory animus.  See supra.  Thus, it is not this Court's place to second-guess the wisdom or even the fairness of the discipline administered here other than whether Plaintiff has sufficient evidence some unlawful motivation was present entitling Plaintiff to present her claims to a jury. Fairness is not the standard governing either summary judgment motions or employment claims presented to a jury.

Without any evidence that similarly situated employees were disciplined less severely or some other evidence of disparate treatment or discriminatory animus, Plaintiff's contention she was treated unfairly – which she no doubt believes to be true – is insufficient to carry her burden here.  She has not demonstrated any genuine issue of material fact on this question.  Thus, because she has failed to sustain an essential element of her cause of action, summary judgment on her age discrimination claim is appropriate.  See Celotex Corp. v. Catrett, 477 U.S. at 323.

---

[5] "That plaintiff's coworkers may have thought that [she] did a good job, or that [she] did not 'deserve' [to be discharged], is close to irrelevant." Conkright v. Westinghouse Elec. Corp., 933 F.2d 231, 235 (4th Cir. 1991).

**C. Legitimate, Non-Discriminatory Reason and Pretext**

Even assuming, <u>arguendo</u>, Plaintiff could sustain a prima

facie case for age discrimination, she cannot survive a summary

judgment challenge on her burden to cast Defendant's legitimate,

non-discriminatory reason as pretext.  Defendant discharged

Plaintiff following its investigation concluded she "stole company

time."  Plaintiff does little to cast a shadow of doubt upon this

reason.  While she does make sweeping statements that the offered

reason is pretextual, those conclusory arguments have no

underpinning in the record before the Court.

"Pretext may be shown through direct or

circumstantial evidence of falsity or discrimination.  The

plaintiff's failure to come forth with evidence rebutting the

defendant's explanation may entitle the defendant to judgment."

Barefoot v. Sundale Nursing Home, 457 S.E.2d 152, 160 (W. Va. 1995)

(citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248,

255-56 (1973)).  The Fourth Circuit has opined:

> While reviewing the employer's articulated
> reasons for discharge and the plaintiff's
> refutation thereof, we must keep in mind that
> "Title VII is not a vehicle for substituting
> the judgment of a court for that of the
> employer." Id. at 377. Particularly, this
> Court "does not sit as a kind of super-
> personnel department weighing the prudence of
> employment decisions made by firms charged
> with                          employment
> discrimination...." Giannopoulos v. Brach &
> Brock Confections, Inc., 109 F.3d 406, 410
> (7th Cir. 1997) (quotations and citations

omitted). See also EEOC v. Clay Printing
Co., 955 F.2d 936, 946 (4th Cir. 1992). Our
sole concern is

> whether the reason for which the
> defendant discharged the plaintiff
> was discriminatory. Thus, when an
> employer articulates a reason for
> discharging the plaintiff not
> forbidden by law, it is not our
> province to decide whether the
> reason was wise, fair, or even
> correct, ultimately, so long as it
> truly was the reason for the
> plaintiff's termination.

Giannopoulos, 109 F.3d at 410-11.

DeJarnette v. Corning Inc., 133 F.3d 293, 298-99 (4th Cir. 1998).[6]
Considering the record before the Court, the only conclusion that
can be made is the stated reason for discharge was "truly the
reason for the plaintiff's termination" obviating the need for a
jury trial.

Defendant conducted an internal investigation involving
multiple individuals after suspicions were piqued about

---

[6] The Court considers the analysis of the Fourth Circuit persuasive
despite the only claim here being a state law claim.  The West
Virginia courts have long encouraged reliance on federal
jurisprudence in employment claims (outside disability
discrimination claims or where the relevant statutory language
differs).  See Barefoot, 457 S.E.2d at 159-60 ("We have
consistently held that cases brought under the West Virginia Human
Rights Act, W.Va.Code, 5-11-1, et seq., are governed by the same
analytical framework and structures developed under Title VII, at
least where our statute's language does not direct
otherwise. E.g., West Va. University v. Decker, 191 W.Va. 567, 447
S.E.2d 259 (1994); Conaway v. Eastern Associated Coal Corp., 178
W.Va. 164, 358 S.E.2d 423 (1986).").

Plaintiff's timekeeping while performing Secret Shopper duties. Plaintiff was afforded more than one opportunity to explain the discrepancies in Defendant's time records and the work she claimed to perform.  Specifically, Ms. Alastanos and Ms. Adamescu advised Plaintiff there was a "block of time where no calls were made and it was logged on her timecard under the Secret Shopper Program code." (ECF No. 29 at 7; Pl. Dep. Tr. at 90).  Her response, prior to instituting this litigation, was "she was human and could have made an error."  (Pl. Dep. Tr. at 91; ECF No. 29 at 7 and 10). Plaintiff did not provide Defendant with any other explanation for the discrepancy.  (Pl. Dep. Tr. at 91).  Defendant's termination decision was made by two management level employees both of whom fall within the Human Rights Act's protected age class.  Plaintiff affirmatively disclaimed any personal knowledge of the decision-making process or discussion.  (Pl. Dep. Tr. at 59, 61, 100, 113 and 128.)

Lacking personal knowledge sufficient to demonstrate a genuine issue of material fact, Plaintiff has failed to point the Court to any evidence in the record of a similarly-situated employee who Defendant treated differently.  She cites no evidence of animus-revealing comments or statements from the decision-

makers or anyone else.[7]  Instead, she declares "[i]t is clear that company policy was not the reason Ms. Mauro was terminated."  Pl. Resp. at 16.[8]  She also labels the reason for her discharge as "trumped up" without any supporting evidence.  Id.  The record before the Court, specifically the sworn testimony cited by both parties, reveals otherwise.  Without any evidence of pretext, Plaintiff has failed to satisfy a necessary burden on her age discrimination claim.  Thus, summary judgment is not only appropriate, it is required under Rule 56.  See Fed. R. Civ. P. 56(a)("The court **shall** grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

---

[7] Again, the Court is mindful that such evidence is not common in discrimination litigation.  Plaintiff fails, however, to provide this Court any other category of evidence which could lead a "rational trier of fact" to find in her favor on the remaining Count of the Complaint.

[8] Plaintiff argues, based on Supreme Court of the United States and Fourth Circuit precedent, she should not have to satisfy a so-called "pretext plus" standard.  No authority is cited that this standard applies to the state law claim presented here.  The Court need not decide that issue in the context of the West Virginia Human Rights Act to dispose of this summary judgment motion.  As noted in Siraj v. Hermitage, 51 Fed. Appx. 102 (4th Cir. 2002), "a plaintiff's prima facie case, **combined with sufficient evidence to find that the employer's asserted justification is false**" may sustain a plaintiff's jury verdict.  Id. at 109 (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-43 (2000)(emphasis added)).  Here, the Court has found Plaintiff falls short of her burden to show a prima facie case of age discrimination nor has she marshalled any evidence Defendant's stated legitimate, non-discriminatory reason is pretextual.  She has not "eliminated" her employer's justification for the adverse employment action.  Thus, she has not been subjected to any "pretext plus" burden.

movant is entitled to judgment as a matter of law.")(emphasis added).

## V.    <u>CONCLUSION</u>

Finding no genuine dispute of any material fact and that Defendant is entitled to judgment as a matter of law, the Court **GRANTS** Defendant's motion (ECF No. 27), awards it summary judgment and **DISMISSES** this matter from the Court's docket **WITH PREJUDICE**. The Clerk is hereby directed to enter judgment in Defendant's favor in accordance with this Order.

The Clerk shall forward a copy of this Memorandum Opinion and Order as well as the aforementioned Judgment Order to all counsel of record.

**IT IS SO ORDERED.**

**DATED:**  September 21, 2020

<u>/s/ Thomas S. Kleeh</u>
Honorable Thomas S. Kleeh
United States District Court Judge